UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOSHUA ELISHA-DUWANE WHITE,

    Defendant.

Case No. 13-cr-20653-1
Hon. Matthew F. Leitman

_____/

**ORDER GRANTING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE (ECF No. 39)**

On April 23, 2014, Defendant Joshua Elisha-Duwane White pleaded guilty to two offenses: being a felon in possession of a firearm and possessing cocaine base with intent to distribute. On August 14, 2014, White was sentenced to 120 months imprisonment. Based on the good time credits that White has earned and is expected to earn, his anticipated release date is March 18, 2022. Thus, White has already served more than 80% of his expected custodial sentence.

White now moves for compassionate release. (*See* Mot. for Compassionate Release, ECF No. 39.) White argues that he has two medical conditions – hypertension and obesity – that, in combination with one another, make him especially suspectible to a severe outcome (including death) if he contracts COVID-19. Further, White is currently incarcerated in a facility, FCI Milan, that has

experienced a serious outbreak in confirmed cases of COVID-19, including the coronavirus-related deaths of at least three prisoners. (*See COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (listing, as of May 19, 2020, 9 active cases of COVID-19 among FCI Milan prisoners, 11 active cases among staff, and 3 confirmed coronavirus-related prisoner deaths).)

For the reasons explained below, the Court **GRANTS** White's Motion for Compassionate Release (ECF No. 39).

# I

## A

On April 23, 2014, Defendant Joshua Elisha-Duwane White pleaded guilty to two offenses: being a felon in possession of a firearm and possessing cocaine base with intent to distribute. (*See* Rule 11 Plea Agreement, ECF No. 23, PageID.61–63.) White's sentencing guidelines range called for a custodial sentence of 151–188 months imprisonment. (*See id.*, PageID.64.) White's guidelines range was calculated in part by factoring in his criminal history, which included convictions for breaking and entering, delivery/manufacture of a controlled substance, disorderly conduct, trespass, third degree fleeing of a police officer, uttering and publishing, and carrying a concealed weapon. (*See id.*, PageID.74.) The Government recommended a sentence of 168 months, the mid-point of White's guidelines range. (*See* Gov't Sentencing Memorandum, ECF No. 27, PageID.99.) On August 14,

2014, United States District Judge Marianne O. Battani granted White a downward departure from his guidelines range and sentenced him to 120 months imprisonment. (*See* Judgdment, ECF No. 28, PageID.101–102.)

Based on the good time credits that White has earned and the credits he is expected to earn, White's anticipated release date is March 18, 2022. (*See* Mot. for Compassionate Release, ECF No. 39, PageID.144.) Thus, White has already served more than 80% of his expected custodial sentence.

**B**

White's health has deteriorated since he reported to prison. He has gained over 60 pounds, including 24 pounds that he gained between March 7 and May 4, 2020. (*See* Gov't Resp. to Def.'s Third Supp. Br., ECF No. 53, PageID.794; White Health Records, ECF No. 49, PageID.625, 657.) He is currently 5'8" tall and weighs 254 pounds. (*See* White Health Records, ECF No. 49, PageID.625.) White's body mass index ("BMI") is 38.6. (*See* Gov't Resp. to Def.'s Third Supp. Br., ECF No. 53, PageID.794.) White qualifies as obese by medical standards due to his BMI – in fact, he is at the top of the "obese" range and nearly qualifies as "severely obese" (which requires a BMI of 40 or higher). (*See* Aff. of Epidemiologist Katie Lin Brasher-Beaudry ¶ 6, ECF No. 51-1, PageID.688; *see also Adult Body Mass Index (BMI)*, CDC, https://www.cdc.gov/obesity/adult/defining.html.)

3

White's blood pressure has also increased while he has been incarcerated. Doctors first appear to have taken notice of White's elevated blood pressure on March 27, 2020, when his blood pressure in his right arm was measured at 151/98. (*See* White Health Records, ECF No. 49, PageID.587.) On May 4, 2020, White's blood pressure was measured at 139/85 in his left arm and 153/95 in his right arm. (*See id.*, PageID.625.) That same day, doctors diagnosed White with hypertension and prescribed him Amlodipine for his high blood pressure. (*See id.*, PageID.626–627.)

### C

While incarcerated, White has undertaken a number of steps to improve himself. He has "successfully completed courses such as introduction to Spanish, career resource center, avoid the money trap, social security, release requirements, healthcare issues, introduction to sports management, process of change, and green maintenance." (Mot. for Compassionate Release, ECF No. 39, PageID.159.) He has also completed a 60-hour drug program and participated in courses "such as the life connection program, aids awareness, anger management, inside out dad, and parenting 1 and 2." (*See id.*) And the Government has not indicated that White has presented any disciplinary problem while incarcerated.

According to White, several of his family members have offered to help him find work and provide him transportation to and from a job once he obtains one. (*See*

4

*id.*) Should he be released, White plans to reside at his sister's home, where she lives with her boyfriend and their child. (*See id.*, PageID.160.) White also says that he enjoys "the support of numerous family members who are eager to help him reenter society." (*See id.*)

### D

In April, 2020, White's attorney sent a petition to the warden of FCI Milan requesting his release. (*See* Def.'s Third Supp. Br., ECF No. 51, PageID.672.) The prison received the petition on April 23, 2020. (*See id.*; Tracking Information, ECF No. 51-1, PageID.681–682.) Thus, it has been approximately 27 days since the warden received White's petition.

Second, on April 29, 2020, White – again, through counsel – filed the instant Motion for Compassionate Release (ECF No. 39). The Government opposes White's motion. The Court held an off-the-record telephonic status conference on White's motion on May 1, 2020, and an on-the-record video hearing on May 11, 2020.

### II

Before turning to the merits of White's claim for compassionate release, the Court first addresses the Government's procedural argument that the Court is barred from reviewing White's motion because he did not exhaust the Bureau of Prisons' (the "BOP's") administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A).

(*See* Resp., ECF No. 47, PageID.425–429.)  That statute provides that a defendant may move for compassionate release if either (1) "the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or (2) "30 days [have elapsed] from the receipt of such a request by the warden of the defendant's facility." § 3582(c)(1)(A).  According to the Government, White failed to exhaust his administrative remedies because he "did not file his motion after completing the administrative process [for compassionate release] within the Bureau of Prisons." (Resp., ECF No. 47, PageID.429.)  The Government contends that this exhaustion requirement is "mandatory" and "cannot be excused, even in light of the Covid-19 pandemic." (*Id.*, PageID.426–428; quotation omitted.)

The Court respectfully disagrees.  Rather, for the reasons explained at length by United States District Judge Jed Rakoff, excusing strict exhaustion under § 3582(c)(1)(A) during the COVID-19 pandemic is consistent with the congressional intent underlying the exhaustion requirement. *See United States v. Haney*, --- F. Supp. 3d ---, 2020 WL 1821988, at *3–4 (S.D.N.Y. Apr. 13, 2020) (explaining in detail how "Congressional intent not only permits judicial waiver of the 30-day exhaustion period, but also, in the current extreme circumstances, actually favors such waiver, allowing courts to deal with the [COVID-19]

emergency before it is potentially too late").[1] The *Haney* approach has recently been explained by another Judge in this district:

> [T]he court in *United States v. Haney*, No. 19-CR-541, 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020) (Rakoff, J.), found some flexibility in the exhaustion requirement by examining the statutory text. The court first noted that exhaustion requirements generally "serve[] the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *Id.* at *3 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). But because the statute allows a prisoner to seek judicial review after 30 days even without an administrative determination, the first purpose is diminished in favor of a congressional preference " 'for the defendant to have the right to a meaningful and prompt judicial determination of whether he should be released.' " *Ibid.* (quoting *United States v. Russo*, No. 16-cr-441, 2020 WL 1862294 (S.D.N.Y. Apr. 3, 2020)). Judge Rakoff reasoned "that Congress cannot have intended the 30-day waiting period of § 3582(c)(1)(A) to rigidly apply in the highly unusual situation in which the nation finds itself today." *Ibid.* And he derived from the statutory text "that Congressional intent not only permits judicial waiver of the 30-day exhaustion period, but also, in the current extreme circumstances, actually favors such waiver, allowing courts to deal with the emergency before it is potentially too late." *Id.* at *4.

---

[1] Numerous district courts, including in this district, have reached this same conclusion when reviewing compassionate release claims from prisoners who are at risk of severe consequences from contracting COVID-19. *See United States v. Atwi*, No. 18-20607, 2020 WL 1910152, at *3 (E.D. Mich. Apr. 20, 2020); *United States v. Pinkerton*, No. 15-30045-3, 2020 WL 2083968, at *3–5 (C.D. Ill. Apr. 30, 2020); *United States v. Bess*, No. 16-156, 2020 WL 1940809, at *7 (W.D.N.Y. Apr. 22, 2020); *United States v. Sanchez*, No. 18-00140, 2020 WL 1933815, at *4–5 (D. Conn. Apr. 22, 2020); *United States v. Guzman Soto*, --- F. Supp. 3d ---, 2020 WL 1905323, at *4–5 (D. Mass. Apr. 17, 2020).

7

> That is a sensible reading of the statute, which has been adopted by another judge in this district. *See United States v. Atwi*, No. 18-20607, 2020 WL 1910152, at *3 (E.D. Mich. Apr. 20, 2020) (Michelson, J.). The BOP's 30-day window to address a compassionate release petition represents but a few ticks on the administrative clock — evidence of Congress's expectation of a quick turnaround before the courts get involved. "But 30 days when the statute was passed and 30 days in the world of COVID-19 are very different." *Ibid.* "Congress likely did not contemplate that a once-in-a-lifetime pandemic would lead hundreds of federal prisoners to seek compassionate release all within a four-week window." *Ibid.* The exhaustion requirement is waivable in appropriate circumstances.

*United States v. Flenory*, No. 05-80955, 2020 WL 2124618, at *5 (E.D. Mich. May 5, 2020) (Lawson, J.).[2]  Under the *Haney* approach, waiving strict adherence to the exhaustion requirement is appropriate when, among other things, requiring exhaustion would subject the prisoner to risk of "undue prejudice." *Id.*

Here, requiring strict exhaustion would subject White to undue prejudice. Given White's combination of underlying illnesses – hypertension and obesity – he is at risk of suffering dire medical consequences if he contracts COVID-19. (*See* Aff. of Epidemiologist Brasher-Beaudry ¶ 7, ECF No. 51-1, PageID.688 ("Having two

---

[2] Although Judge Lawson adopted Judge Rakoff's reasoning in *Haney* that a district court "has the authority to waive the exhaustion requirement," he ultimately decided "it is not appropriate to waive it in this instance" because the prisoner had "not made a convincing case that he would suffer 'undue prejudice' by waiting" for the BOP to act on his petition for compassionate release. *Flenory*, 2020 WL 2124618, at *5, 7. In White's case, however, he will suffer undue prejudice if the Court declines to review his case based on exhaustion grounds because White's serious medical conditions place him at risk for severe illness or death if he contracts COVID-19.

chronic conditions, such as obesity and hypertension, puts you at a higher risk for severe illness from COVID-19 compared to only having one.").) Thus, time is of the essence in reviewing his claim for compassionate release. *See United States v. Park*, No. 16-cr-473, 2020 WL 1970603, at *5 (S.D.N.Y. Apr. 24, 2020) ("Every day – indeed, every minute – may count, particularly for someone like Ms. Park who is at a high-risk from COVID-19 and currently lives in a facility with a documented outbreak and limited means of protection."); *Haney*, 2020 WL 1821988, at *4 ("[E]ach day a defendant must wait before presenting what could otherwise be a meritorious petition threatens him with a greater risk of infection or worse.") Accordingly, under these circumstances, the Court may fairly review White's claim without requiring strict adherence to the exhaustion requirement of § 3582(c)(1)(A).

### III

The Court now turns to the merits of White's claim for compassionate release.

### A

Section 3582(c)(1)(A) describes when a court may grant a prisoner compassionate release as follows:

> [T]he court . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with

>applicable policy statements issued by the Sentencing Commission.

§ 3582(c)(1)(A).

The "applicable policy statements" mentioned in the statute are found in U.S.S.G. § 1B1.13. The comment to that section identifies the reasons for release that may rise to the level of "extraordinary and compelling":

> 1. <u>Extraordinary and Compelling Reasons</u>.— Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
>> (A) <u>Medical Condition of the Defendant</u>.—
>>
>>> (i) The defendant is suffering from a terminal illness (<u>i.e.</u>, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (<u>i.e.</u>, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>>
>>> (ii) The defendant is—
>>>
>>>> (I) suffering from a serious physical or medical condition,

10

    (II)  suffering from a serious functional or cognitive impairment, or

    (III)  experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) <u>Age of the Defendant</u>.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) <u>Family Circumstances</u>.

  (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

  (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) <u>Other Reasons</u>.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

One district court has offered the following helpful explanation concerning how to apply the amended compassionate release statute in conjunction with the Sentencing Commission's guidance:

> [P]ursuant to the statutory directive in 18 U.S.C. § 3582(c)(1)(A) and in conjunction with the Sentencing Commission guidance provided in U.S.S.G. § 1B1.13, the Court must consider three issues in evaluating [a federal prisoner's] Compassionate Release application: (i) whether extraordinary and compelling reasons warrant a sentence reduction consistent with the Sentencing Commission's policy statement, (ii) whether [the prisoner] is "a danger to the safety of any other person or to the community," and (iii) whether the section 3553(a) factors "to the extent they are applicable," weigh in favor of a sentence reduction. *United States v. Bellamy*, 2019 WL 3340699, at *2 (D. Minn. July 25, 2019); [*United States v.]* York*, 2019 3241166, at *5 [E.D. Tenn. July 18, 2019]; *United States v. Beck*, 2019 WL 2716505, at *7 (D.N.C. June 28, 2019); *United States v. Johns*, 2019 WL 2646663, at *3-4 (D. Ariz. June 27, 2019); [*United States v.] McGraw*, 2019 WL 2059488, at *3 [S.D. Ind. May 9, 2019].

*United States v. Wong Chi Fai*, No. 93-cr-1340, 2019 WL 3428504, at *2 (E.D.N.Y. July 30, 2019).

### B

White has demonstrated to the Court that his combination of worsening health conditions is a "serious medical condition" that warrants compassionate release. In particular, White submitted an affidavit from Katie Lin Brasher-Beaudry, M.P.H., an epidemiologist who has reviewed White's health records and several leading

12

studies on COVID-19. (*See* Brasher-Beaudry Aff. ¶¶ 1–7, ECF No. 51-1, PageID.686–688.) According to Brasher-Beaudry, the combination of White's obesity and hypertension substantially increases his risk of dire medical consequences if he contracts COVID-19:

> Having two chronic conditions, such as obesity and hypertension, puts you at a higher risk for severe illness from COVID-19 compared to only having one. Any time you start layering underlying health conditions, risk for illness and complications increases, no matter what age you are. The immune system of someone who suffers from obesity and hypertension is going to face an uphill battle when fighting off any virus, let alone a novel coronavirus.

(*Id.* ¶ 7, PageID.688; *see also Perez-Perez v. Adduci*, No. 20-10833, 2020 WL 2305276, at *5–6 (E.D. Mich. May 9, 2020) (noting that a prisoner who suffered from hypertension faced a heightened risk of severe medical consequences and/or death if the prisoner contracted COVID-19); Kristen Holmes & Kevin Bohn, *Azar Lays Part of Blame for COVID-19 Death Toll on State of Americans' Health*, CNN (May 17, 2020), https://www.cnn.com/2020/05/17/politics/us-health-conditions-coronavirus-alex-azar-cnntv/index.html (quoting Health and Human Services Secretary Alex Azar) ("[I]f we have hypertension, if we have diabetes, we present with greater risk of severe complications from corona – from this coronavirus.").)

Moreover, White "is unable to provide self-care within the environment of" FCI Milan because he "is unable to practice effective social distancing and hygiene

13

to minimize [his] risk of exposure." *United States v. Colvin*, No. 19-179, 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020). White's inability to provide self-care in FCI Milan is especially important because the facility has had a serious outbreak of COVID-19 – there are currently 9 active cases of COVID-19 among prisoners, 11 active cases among staff, and three prisoners have already passed away due to COVID-19. Although the infection rate at Milan appears to be decreasing (*see* Resp., ECF No. 47, PageID.412), the continued presence of the virus at the facility suggests it presents an ongoing risk, especially to vulnerable prisoners such as White.

Under these circumstances, the combination of White's physical impairments and his inability to provide self-care constitutes a serious medical condition, and that condition is an "extraordinary and compelling reason" for his release. *See Colvin*, 2020 WL 1613943, at *3–4 (finding that a prisoner had a serious medical condition warranting compassionate release where the prisoner suffered similar illnesses as White, including high blood pressure, and could not provide self-care during the COVID-19 pandemic); *see also United States v. Zukerman*, No. 16-cr-194, 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (same); *United States v. Rodriguez*, --- F. Supp. 3d ---, 2020 WL 1627331, at *7–11 (E.D. Pa. Apr. 1, 2020) (same).

## C

The Court also finds that releasing White would be consistent with the factors listed in 18 U.S.C. § 3553(a).

The nature and circumstances of White's offense are undoubtedly serious, and that one factor could conceivably weigh against granting compassionate release. *See* § 3553(a)(1). But the Court finds that releasing White to home confinement at this point and under these circumstances would be consistent with the other § 3553(a) factors, and the Court concludes that those factors outweigh the seriousness-of-offense factor.

White's most relevant personal characteristic is his vulnerability to COVID-19 due to his hypertension and obesity. Further, while White has a not-insignificant criminal history, he has worked hard to better himself while incarcerated and to prepare to meaningfully contribute to society upon his release. These characteristics weigh in favor of release. *See id.*

Likewise, the goal of imposing sufficient punishment would be satisfied by releasing White to home confinement now. *See* § 3553(a)(2)(A). He has served over 80% of his custodial sentence and has been incarcerated since 2014. That has been a meaningful punishment for his crimes. Moreover, White will suffer additional restrictions on his liberty through home confinement. White's time served and the

continued restrictions on his freedom of movement, together, satisfy the goal of imposing sufficient punishment.

In addition, the goal of general deterrence will not be undermined because White has already served a substantial prison term for his offenses. *See* § 3553(a)(2)(B). And releasing White under these unusual circumstances – his vulnerability to the COVID-19 pandemic – also will not undermine the goal of general deterrence.

Next, releasing White to home confinement will not subject the public to a serious risk. *See* § 3553(a)(2)(C). As described above, White appears to have improved himself and moved beyond his criminal past, and he does not appear to have presented any disciplinary or safety problems while incarcerated.

Furthermore, the most effective way to deliver medical care to White is outside of FCI Milan where he can receive needed care and monitoring without facing an immediate threat of COVID-19. *See* § 3553(a)(2)(D).

Finally, White's release will not produce an unwarranted sentencing disparity because it accounts for his unique medical circumstances. *See* § 3553(a)(6).

## IV

Accordingly, for the reasons explained above, **IT IS HEREBY ORDERED** that White's Motion for Compassionate Release (ECF No. 39) is **GRANTED**.

The custodial portion of White's sentence is reduced to time served plus 14 days (to allow for quarantine prior to release from FCI Milan). Following the completion of his custodial sentence, White shall begin serving the 36 months of supervised release that Judge Battani imposed in White's Judgment. (*See* Judgment, ECF No. 28, PageID.103.) The Court adds as a condition of that supervised release that for <u>eight months</u> White shall be subject to home confinement and shall not leave his residence other than for medical appointments and appointments with counsel. The Court will not order White to wear a GPS tether at this time due to the COVID-19 pandemic (and the Court's reluctance to subject the Court's probation officers to any risks associated with applying White's tether), but the Court will hold a telephonic status conference with counsel in sixty days to discuss whether to require White to wear a tether at that time. In all other respects, White's original sentence remains unchanged.

**IT IS SO ORDERED**.

                                           s/Matthew F. Leitman
                                           MATTHEW F. LEITMAN
                                           UNITED STATES DISTRICT JUDGE

Dated:  May 20, 2020

18

     I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 20, 2020, by electronic means and/or ordinary mail.

                                         s/Holly A. Monda
                                         Case Manager
                                         (810) 341-9761